SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Thomas Saccone v. Board of Trustees of the Police and Firemen's Retirement System** (A-49-12) (071841)

**Argued February 4, 2014 -- Decided September 11, 2014**

**LaVECCHIA, J., writing for a majority of the Court.**

In this appeal, the Court considers whether the disabled child of a retired member of the Police and Firemen's Retirement System (PFRS) may have his or her survivors' benefits paid into a first-party special needs trust (SNT) created for him or her under 42 U.S.C.A. § 1396p(d)(4)(A).

Thomas Saccone (Saccone) is a retired firefighter and a member of the PFRS. As a retired PFRS member, Saccone receives a pension and other benefits in recompense for his service. His wife and son are entitled to receive pension death benefits, or "survivors' benefits," if Saccone predeceases them. Following his death, those benefits will be awarded directly to Saccone's wife and son without passing through Saccone's estate.

Saccone's son, Anthony, suffers from a severe mental disability and receives public assistance, which is available only to individuals with incomes below a specified amount. Fearing that Anthony's share of the survivors' benefits would disqualify him from receiving public assistance, Saccone wanted to ensure that the PFRS survivors' benefits for Anthony would be paid to the "Anthony J. Saccone Supplemental Benefits Trust." Since assets held in an SNT or supplemental benefits trust are not counted as income for the purpose of many public assistance programs, Saccone believed that designating that the survivors' benefit be paid to the trust would allow Anthony to receive Saccone's death benefits without jeopardizing his eligibility for public assistance.

Saccone contacted the Division of Pension and Benefits (Division) seeking reassignment of the survivors' benefits from Anthony as an individual to an SNT in Anthony's name. The Division denied the request, stating that the plain language of N.J.S.A. 43:16A-12.1(a) precluded him from changing the beneficiary of his survivors' benefit. Saccone filed an administrative appeal with the PFRS Board of Trustees (Board), seeking to overturn the Division's decision. The Board refused to entertain Saccone's request because Saccone was still alive, and, therefore, it believed that any decision relating to the assignment of Saccone's survivors' benefits would be an advisory opinion. The Appellate Division affirmed. This Court granted Saccone's petition for certification, summarily reversed, and remanded the case to the Board for a decision on the merits. Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 212 N.J. 564, 564-65 (2011).

On remand, the Board rejected Saccone's claim on the merits, finding that the PFRS statutory framework did not permit Saccone to designate a trust as the beneficiary of his survivors' benefits. On appeal, the Appellate Division affirmed the Board's administrative determination, concluding that the Legislature had purposefully eliminated a PFRS member's ability to assign a trust as a beneficiary. The panel further noted that its decision did not conflict with New Jersey's public policy favoring the establishment of SNTs and that Saccone could not fund an SNT with Anthony's share of survivors' benefits because those benefits belong to Anthony. Accordingly, the panel concluded that the Board's determination was not arbitrary, unreasonable, or capricious. This Court granted certification. 213 N.J. 387 (2013). This Court also granted the motions of the Special Needs Alliance (SNA), the New Jersey Chapter of the National Academy of Elder Law Attorneys (NAELA), and the Guardianship Association of New Jersey (GANJ) to appear as amici curiae.

**HELD**: The disabled child of a retired member of the PFRS may have his or her survivors' benefits paid into a first-party SNT created for him or her under 42 U.S.C.A. § 1396p(d)(4)(A).

1. The PFRS is a statewide pension system for full-time policemen and firemen designed to ensure the protection of all such officers through pensions payable from the fund. Upon the death of a PFRS member, two benefits become payable to the member's surviving beneficiaries: a monthly survivors' pension benefit payable to the PFRS

1

member's surviving spouse and children pursuant to N.J.S.A. 43:16A-12.1(a), and a group life insurance benefit pursuant to N.J.S.A. 43:16A-59. By creating an automatic death benefit payable to the member's surviving spouse and children, the Legislature eliminated a member's ability to name beneficiaries. (pp. 13-14)

2. An agency's determination on the merits will be sustained unless there is a showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record. The Court must discern the Legislature's intent. The plain language of the statute is the starting point for its analysis. If a statute's clear language creates ambiguity, extrinsic evidence may help guide the construction of the statute. While a PFRS member is not free to designate any beneficiary he or she so chooses, it does not necessarily follow that the language of the statute forecloses the possibility of designating a trust for the benefit of one of the statutorily designated beneficiaries, particularly given the strong public policy favoring the protection of a public employee's family. (pp. 15-17)

3. Federal public assistance programs provide aid to disabled individuals whose income does not exceed a specified amount. The survivors' death benefit that Anthony would receive if his father predeceases him, if paid directly to Anthony, would be considered income and could impair his receipt of public assistance. This consequence may be avoided through the use of an SNT, which is a trust intended to allow a disabled individual to maintain eligibility for certain needs-based government benefits. The trust stands in the place of the disabled beneficiary, and the assets held by the trust do not count as income for public assistance purposes. Upon the death of the beneficiary, state medical assistance providers are reimbursed from any remaining assets in the trust up to the total amount spent on the beneficiary's medical care. (pp. 18-22)

4. The question on appellate review is whether the Board acted arbitrarily, capriciously, or unreasonably in declining to consider an SNT as Anthony's proposed equivalent, thereby allowing him to receive his future survivors' death benefit, without losing public assistance, should his father predecease him. Here, the Board's response is contrary to the legislative policy underlying the statute. Paying Anthony's share of survivors' benefits to an SNT established for his sole benefit is equivalent to paying those benefits to Anthony himself. Any assets remaining in the trust following the life of the disabled person must be repaid to the State. This protects Anthony's financial interest and furthers the Legislature's public policies in favor of both SNTs and survivors' benefits. In that vein, the Appellate Division erroneously concluded that the Legislature's failure to explicitly sanction "Miller trusts" established by 42 U.S.C.A. § 1396p(d)(4)(B) implicitly suggested that all self-settled or first-party SNTs were impermissible under New Jersey law. As amicus NAELA explained, the Legislature was unable to authorize Miller trusts because federal law prohibits the use of such trusts in states, like New Jersey, that make use of a medically needy Medicaid plan. There is, however, no compelling reason to conclude that the Legislature meant, by its silence, to prohibit the use of a self-settled or first-party SNT created pursuant to 42 U.S.C.A. § 1396p(d)(4)(A). (pp. 23-25)

5. Disabled persons, like Anthony, are financially impaired by the Board's and the Appellate Division's strict construction of the survivors' benefits statute. The Court cannot conclude that the Legislature would abide a statutory construction that disserves the very people it was intended to help. The Board's view of the word "child" in the survivors' benefits statute forces the disabled child of a PFRS retiree to choose between abandoning the survivors' benefits earned by his parent or forgoing public assistance programs for his medical needs. This serves no legitimate public policy. The reference to "child" in N.J.S.A. 43:16A-12.1(a) is equivalent to a first-party SNT established for a disabled child, such as Anthony, pursuant to 42 U.S.C.A. § 1396p(d)(4)(A). The Board erred in not accommodating Saccone's request to reform the manner in which Anthony would receive any future survivors' benefits by having the survivors' benefits be paid into a first-party SNT for Anthony. The Board's contrary determination, affirmed by the Appellate Division, was arbitrary, capricious, and unreasonable. (pp. 26-28)

The judgment of the Appellate Division is **REVERSED.** The Board's determination is set aside and the matter is **REMANDED** to the Board for further administrative action consistent with this opinion.

**JUDGE CUFF, DISSENTING,** joined by **JUSTICE PATTERSON,** expresses the view that the plain language of N.J.S.A. 43:16A-12.1(a) prohibits a PFRS member from designating the beneficiary of his or her survivors' benefits.

**CHIEF JUSTICE RABNER, JUSTICE FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion in which JUSTICE PATTERSON joins. JUSTICE ALBIN did not participate.**

THOMAS SACCONE,

    Plaintiff-Appellant,

        v.

BOARD OF TRUSTEES OF THE
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Defendant-Respondent.

        Argued February 4, 2014 – Decided September 11, 2014

        On certification to the Superior Court,
        Appellate Division.

        Donald D. Vanarelli argued the cause for
        appellant (Law Office of Donald D.
        Vanarelli, attorney; Mr. Vanarelli and
        Whitney W. Bremer, on the brief).

        Melissa H. Raksa, Assistant Attorney
        General, argued the cause for respondent
        (John J. Hoffman, Acting Attorney General of
        New Jersey, attorney; Jeremy M. Vaida and
        Diane J. Weeden, Deputies Attorney General,
        on the letter briefs).

        Ron M. Landsman, a member of the Maryland
        bar, argued the cause for amicus curiae
        Special Needs Alliance, Inc. (Schenck,
        Price, Smith & King, attorneys; Shirley B.
        Whitenack, of counsel; Mr. Landsman, and Ms.
        Whitenack, on the brief).

        Daniel J. Jurkovic argued the cause for
        amici curiae National Academy of Elder Law
        Attorneys, New Jersey Chapter and
        Guardianship Association of New Jersey, Inc.

1

(Mr. Jurkovic and Robert F. Brogan, on the
brief).

John W. Callinan argued the cause for amicus
curiae National Academy of Elder Law
Attorneys, Inc.

JUSTICE LaVECCHIA delivered the opinion of the Court.

In this appeal, we review whether the disabled son of a
retired member of the Police and Firemen's Retirement System
(PFRS) may have his survivors' benefits paid into a first-party
special needs trust (SNT) created for him under 42 U.S.C.A.
§ 1396p(d)(4)(A).  We hold that he may and reverse the contrary
administrative action by the PFRS Board of Trustees (Board).

The Board's strict view of how to implement the word
"child" in the survivors' benefits statute when dealing with the
circumstances of a Supplemental Security Income (SSI) eligible
disabled child of a PFRS retiree would have forced this class of
beneficiary into an untenable situation.  The Board's
determination required a disabled child of a PFRS retiree to
have to choose between abandoning the survivors' benefit earned
by his father and forgoing public assistance programs for his
medical needs.  That choice is harsh and unwarranted.  No
legitimate public policy is advanced by the Board's
interpretation.  Both the federal government's SSI and related
medical assistance programs and New Jersey's SNT statutes permit
the use of self-settled (d)(4)(A) SNTs.  We reject as arbitrary,

2

capricious, and unreasonable the Board's interpretive determination that foists on disabled children of PFRS retirees, such as the child involved here, what is essentially a forfeiture of survivors' benefits.

## I.

Thomas Saccone (Saccone) is a retired Newark firefighter and a member of the Police and Firemen's Retirement System. As a retired PFRS member, Saccone receives a pension and other benefits in recompense for his service. See generally N.J.S.A. 43:16A-1 to -68. In addition, Saccone's wife and son are entitled to receive pension death benefits, or "survivors' benefits," if Saccone predeceases them. See N.J.S.A. 43:16A-12.1(a). Following his death, those benefits are awarded directly to Saccone's wife and son; they do not pass through Saccone's estate.

Saccone's son, Anthony, suffers from a severe mental disability and currently receives public assistance in the form of SSI and other programs. However, those forms of public assistance are available only to individuals with incomes below a specified amount.[1] Fearing that Anthony's statutorily directed

---

[1] For example, the maximum unearned income an unmarried disabled person in New Jersey may receive and remain eligible for SSI benefits is $772.25. A disabled person's resources also may not exceed $2000. For each dollar of unearned income received over twenty dollars, the maximum SSI benefit of $752.25 is reduced by that amount. See 42 U.S.C.A. § 1382(a)(1)(B), (3)(B); Soc. Sec.

share of the survivors' benefits would place him over the SSI income cap and thereby disqualify him from receiving public assistance, Saccone wanted to ensure that the PFRS survivors' benefits for Anthony would be paid to the "Anthony J. Saccone Supplemental Benefits Trust." Because assets held within a supplemental benefits trust are not counted as income for the purpose of many public assistance programs, Saccone believed that designating a supplemental benefits or special needs trust[2] as the beneficiary in Anthony's stead would allow Anthony to receive Saccone's death benefits without jeopardizing Anthony's eligibility for public assistance.

---

Admin., Program Operations Manual System (POMS) § SI 00810.001 (2011), available at http://policy.ssa.gov/poms.nsf/lnx/ 0500810001; Soc. Sec. Admin., Social Security: A Guide to Supplemental Security Income (SSI) for Groups and Organizations 8, 10-15 (2014), available at http://www.ssa.gov/pubs/EN-05-11015.pdf.

[2] A special needs trust is

> a form of discretionary trust that permits disabled persons (or others acting on their behalf, such as guardians or conservators) to place the assets of the disabled person in a trust (or to place assets of others in a trust) for the supplemental benefit of the disabled person but to still maintain that person's qualification for state and federal support and medical benefits.
>
> [Walter L. Nossaman & Joseph L. Wyatt, Jr., Trust Administration & Taxation § 24.02A (2014) (citations omitted).]

4

On August 18, 2008, Saccone's attorney wrote to the Division of Pension and Benefits (Division) seeking reassignment of the survivors' benefits from Anthony as an individual to an SNT in Anthony's name. The letter explained that, "[d]ue to Anthony's disability and the benefits he receives as a disabled person, he cannot receive any additional assets outright. Therefore, it is necessary for Mr. Saccone to change the beneficiary designation on his pension fund . . . ." The Division denied Saccone's request in a letter dated September 4, 2008. In its letter, the Division stated that, under the plain language of N.J.S.A. 43:16A-12.1(a), Saccone could not change the beneficiary of his death benefits. Further, the Division stated that it would not "be a party to an effort to enable [Anthony] to continue to be eligible for public assistance by not reporting the benefit he receives as a beneficiary as taxable income." Saccone's request that the Division reconsider its decision also was denied.

Saccone filed an administrative appeal with the Board, seeking to overturn the Division's decision. The Board initially refused to entertain Saccone's request because Saccone was still alive, and, therefore, it believed that any decision relating to the assignment of Saccone's survivors' benefits would be an advisory opinion. The Appellate Division affirmed that decision. We granted Saccone's petition for certification

5

and summarily reversed and remanded the case to the Board for a decision on the merits. Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 212 N.J. 564, 564-65 (2011).

On remand, the Board rejected Saccone's claim on the merits, finding that the PFRS statutory framework did not permit Saccone to designate a trust as the beneficiary of his survivors' benefits. Based on its review of the text of N.J.S.A. 43:16A-12.1(a), the Board concluded that PFRS survivors' benefits vest "automatically" in the decedent's spouse and children upon the death of the PFRS member. Cf. N.J.A.C. 17:4-3.4(a) (noting that eligible survivors are "entitled to benefits on the first day of the month following the member's death"). As a result, the Board determined that Saccone was unable to assign a trust in his son's name as a beneficiary. As additional support, the Board pointed to N.J.A.C. 17:4-3.5(b), which states that "[a] retiree cannot designate a primary or a contingent beneficiary for the receipt of the retiree's accumulated pension contributions in the event of the retiree's death." The Board also contrasted the language of the survivors' benefits statute with that of the PFRS group life insurance statute, N.J.S.A. 43:16A-59. Unlike the survivors' benefits statute, the group insurance statute specifically provides that a retiree may designate any individual as a beneficiary, not just a spouse or child. See

6

N.J.S.A. 43:16A-59 ("Benefits under such group [insurance] policy . . . shall be paid . . . to such person . . . as the member shall have nominated . . . ."); see also N.J.A.C. 17:1-5.4(a). Accordingly, the Board determined that the Legislature intended to restrict the potential beneficiaries of a PFRS member's death benefits to a member's spouse and children.

On appeal, the Appellate Division affirmed the Board's administrative determination in an unpublished decision. The panel examined the relevant legislative history and compared the language of the current survivors' benefits statute, N.J.S.A. 43:16A-12.1, with that of its predecessor, N.J.S.A. 43:16A-12. The panel noted that, as initially enacted, N.J.S.A. 43:16A-12 allowed a PFRS member to designate any individual to receive that member's pension death benefits; however, when the Legislature enacted N.J.S.A. 43:16A-12.1 in 1967, it repealed the ability of a PFRS member to choose the beneficiary of his or her survivors' benefits. Instead, those benefits now must go to the deceased PFRS member's spouse and children. In light of that change, the Appellate Division concluded that the Legislature had purposefully eliminated a PFRS member's ability to assign a trust as a beneficiary under N.J.S.A. 43:16A-12.1.

The panel also determined that its decision did not conflict with New Jersey's public policy favoring the establishment of SNTs. The panel compared the three types of

7

SNTs authorized under the federal Medicaid statute, 42 U.S.C.A. § 1396p(d)(4)(A)-(C), with the two types of SNTs authorized in the New Jersey SNT statute, N.J.S.A. 3B:11-37. Noting that the Legislature had not adopted the type of SNT authorized by 42 U.S.C.A. § 1396p(d)(4)(B), which enables a third party to establish an SNT on behalf of a disabled person if the SNT is composed entirely of pension or Social Security benefits due to that disabled person, the panel concluded that such trusts were impermissible in New Jersey. The panel further concluded that New Jersey's SNT statute does not allow a person to fund an SNT with benefits belonging to someone else. Accordingly, the Appellate Division held that, under N.J.S.A. 3B:11-37, Saccone could not fund an SNT with Anthony's share of survivors' benefits because those benefits belong to Anthony, not to Saccone.

Finally, the panel stated that Saccone had not demonstrated the inability of other estate planning approaches to protect Anthony's eligibility for public assistance benefits. Accordingly, the panel concluded that the Board's determination was not arbitrary, unreasonable, or capricious and affirmed its decision.

We granted certification. 213 N.J. 387 (2013). We also granted amicus curiae status to the Special Needs Alliance, the

8

National Academy of Elder Law Attorneys, and the Guardianship Association of New Jersey.

II.

A.

Saccone maintains that the Board adopted, and the Appellate Division affirmed, a cramped interpretation of the PFRS survivors' benefits statute that conflicts with the fundamental purpose of the legislation, namely, to protect the financial stability of a retiree's spouse and children. Saccone argues that, should the Appellate Division's decision be upheld, the distribution of survivors' benefits to Anthony would actually become a survivor's detriment, rendering him ineligible for various forms of public assistance benefits and impairing his financial situation. In other words, under the Appellate Division's construction, Anthony would be adversely impacted by receiving his share of the survivors' benefits. Saccone argues that such a result is plainly at odds with the Legislature's intent in providing survivors' benefits and undermines the Legislature's clear policy favoring the establishment of SNTs. He contends this Court should sanction the use of an SNT to safeguard Anthony's eligibility for public assistance and thereby ensure that the survivors' benefits help, rather than harm, Anthony.

9

Saccone also maintains that alternative forms of estate planning will not protect Anthony's eligibility for public assistance programs. Saccone emphasizes that any direct distribution of survivors' benefits to Anthony will almost certainly place him over the income cap for various public assistance programs and ultimately harm his financial well-being. He alleges that only the creation of an SNT, funded directly by the survivors' benefits, will guarantee that Anthony's income level will not limit his ability to receive public assistance and will avoid placing him in a worse position than before he received the survivors' benefits.

B.

The Board argues in support of the Appellate Division decision. The Board maintains that the text of N.J.S.A. 43:16A-12.1(a) clearly indicates that survivors' benefits may be paid only to a retiree's spouse or children. For that reason, the Board asserts that a retiree cannot control or modify the beneficiaries designated by the statute. The Board points out that the previous survivors' benefits statute, N.J.S.A. 43:16A-12, allowed a retiree to designate any person as a beneficiary of pension death benefits. According to the Board, the Legislature's adoption of N.J.S.A. 43:16A-12.1 was aimed at restricting potential beneficiaries to a retiree's spouse or children. Thus, the Board asserts that allowing Saccone to

10

assign Anthony's share of the survivors' benefits to an SNT in Anthony's name would run counter to the Legislature's express intent. The Board also argues that N.J.A.C. 17:4-3.5(b), which prohibits a retiree from designating a primary or contingent beneficiary as the recipient of the retiree's pension benefits, is consistent with the restrictive approach of N.J.S.A. 43:16A-12.1(a).

Moreover, the Board argues that survivors' benefits do not exist until a retiree's death and therefore are not assignable by the retiree himself. Instead, the Board claims that such benefits vest automatically in the retiree's spouse and children upon the retiree's death. For that reason, the Board asserts that the survivors' benefits are Anthony's property and are beyond Saccone's ability to assign.

C.

The three amici, Special Needs Alliance (SNA), the New Jersey Chapter of the National Academy of Elder Law Attorneys (NAELA), and the Guardianship Association of New Jersey (GANJ), appear in this case in support of Saccone. The amici have assisted in the analysis of the issues raised by Saccone's petition as true friends of the Court. Each amicus has submitted extensive information about SNTs, the relationship of SNTs to the provision of federal public assistance programs, and the role that SNTs should be permitted to play in connection

11

with survivors' benefits under the PFRS. For efficiency's sake, the amici's informative research is woven into our analysis. For present purposes, their respective submissions can be distilled as follows.

The amici uniformly contend that Saccone should be permitted to establish an SNT in accordance with 42 U.S.C.A. § 1396p(d)(4)(A), which allows a parent to establish a trust for the sole benefit of his or her disabled child during the child's lifetime.[3] The amici inform the Court that any assets remaining in a (d)(4)(A) SNT at the time of the child's death are used to repay any state Medicaid benefits previously received. Thus, only Anthony could benefit from the establishment of such a trust in this instance. The amici urge the Court to view such a (d)(4)(A) SNT in Anthony's name simply as an extension of Anthony when construing N.J.S.A. 43:16A-12.1(a).

Further, the amici argue that allowing the use of such an SNT in Anthony's circumstances furthers the public policy considerations that led the Legislature to ensure that death benefits are afforded to the survivors of retired members of the PFRS. The survivors' benefits statute exists for the sole purpose of aiding the spouse and children of deceased PFRS

---

[3] Although Saccone initially proposed use of an SNT, he subsequently refined his argument in recognition that the proper SNT to use for Anthony would be one created pursuant to § 1396p(d)(4)(A), as the amici have explained in detail. Saccone's argument on appeal has centered on that form of SNT.

12

members.  For a disabled person such as Anthony, unless he can receive his benefits through the vehicle of an SNT established under § 1396p(d)(4)(A), the survivors' benefits would become a financial detriment, disserving the very individual they were intended to help.

III.

PFRS is "a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from [the] fund."  Seire v. Police & Fire Pension Comm'n of Orange, 6 N.J. 586, 591 (1951); accord N.J.S.A. 43:16A-2.  PFRS not only provides for the financial well-being of retired police and firemen, but also ensures financial stability for their surviving spouses and children.  See Eyers v. Bd. of Trs., Pub. Emps.' Ret. Sys., 91 N.J. 51, 56-57 (1982).

Upon the death of a PFRS member, two benefits become payable to the member's surviving beneficiaries:  a monthly survivors' pension benefit payable to the PFRS member's surviving spouse and children pursuant to N.J.S.A. 43:16A-12.1(a), and a group life insurance benefit pursuant to N.J.S.A. 43:16A-59.  When the monthly survivors' pension benefit was originally created in 1944, N.J.S.A. 43:16A-12 permitted PFRS members to elect one of three optional retirement plans with varying actuarial values and to designate any beneficiary

13

as the recipient of the benefit.  See L. 1944, c. 255 (repealed 1967).  However, in 1967, the Legislature repealed N.J.S.A. 43:16A-12 and enacted N.J.S.A. 43:16A-12.1, which eliminated the three optional retirement plans in lieu of a life annuity automatically payable to the PFRS member's surviving spouse and children.  See L. 1967, c. 250, § 26.

In its current form, the statute provides that

> [u]pon the death after retirement of any member of the retirement system there shall be paid to the member's widow or widower a pension of 50% of final compensation for the use of herself or himself, to continue during her or his widowhood, plus 15% of such compensation payable to one surviving child or an additional 25% of such compensation to two or more children; if there is no surviving widow or widower or in case the widow or widower dies or remarries, 20% of final compensation will be payable to one surviving child, 35% of such compensation to two surviving children in equal shares and if there be three or more children, 50% of such compensation would be payable to such children in equal shares.
>
> [N.J.S.A. 43:16A-12.1(a).]

By creating an automatic death benefit payable to the PFRS member's surviving widow and children, the Legislature eliminated a member's ability to choose an actuarial value and to name beneficiaries.  This amendment evinced an intent to ensure that a PFRS member's surviving spouse and children received the monthly death benefit.

14

In its final agency determination in the instant case, the Board relied on the text of N.J.S.A. 43:16A-12.1(a) to reject Saccone's request to have his death benefit paid to an SNT for the benefit of his son. An agency's determination on the merits "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)) (internal quotation mark omitted). However, when an agency's decision is based on the "agency's interpretation of a statute or its determination of a strictly legal issue," we are not bound by the agency's interpretation. Ibid. Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review. McGovern v. Rutgers, 211 N.J. 94, 107-08 (2012); Russo, supra, 206 N.J. at 27; State v. Gandhi, 201 N.J. 161, 176 (2010).

When discerning the meaning of a statute, our role "is to discern and effectuate the intent of the Legislature." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012); accord N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013); Allen v. V & A Bros., 208 N.J. 114, 127 (2011). Toward that end, the plain language of the statute provides the starting point for the analysis. In re Kollman, 210 N.J. 557,

15

568 (2012). The language of the statute must be construed in accordance with its ordinary and common-sense meaning. State ex rel. K.O., 217 N.J. 83, 94 (2014); Murray, supra, 210 N.J. at 592.

However, if a statute's seemingly clear language nonetheless creates ambiguity in its concrete application, extrinsic evidence may help guide the construction of the statute. See Kollman, supra, 210 N.J. at 568. Extrinsic guides may also be of use "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012).

IV.

A.

While the language of N.J.S.A. 43:16A-12.1 makes clear that a PFRS member is not free to designate any beneficiary he or she so chooses as the recipient of the death benefit, it does not necessarily follow that the language forecloses the possibility of designating a trust for the benefit of one of the statutorily designated beneficiaries. Indeed, the motivating force behind the Legislature's enactment of N.J.S.A. 43:16A-12.1 appears to have been the financial well-being of a member's surviving spouse and children. Cf. 37 N.J.R. 4521(a) (Dec. 5, 2005) (clarifying Board's position that member's contributions are

16

accumulated to fund survivor benefits and are not refunded to member). New Jersey's courts have long emphasized that pension statutes are "remedial in character" and "should be liberally construed . . . in favor of the persons intended to be benefited thereby." Geller v. Dep't of Treasury, 53 N.J. 591, 597-98 (1969). Pension benefits, which include death benefits payable to the surviving spouse and children of a retired PFRS member, are part of the member's recompense for past service. See Steinmann v. Dep't of Treasury, 116 N.J. 564, 572-73 (1989) (citing Geller, supra, 53 N.J. at 597-98) (noting compensatory nature of pensions); Masse v. Bd. Of Trs., Pub. Emps. Ret. Sys., 87 N.J. 252, 260-62 (1981) (reviewing judicial recognition of pensions as compensation for services rendered). The Board has been reminded of its obligation to consider the equities of each public employee's unique and individual circumstances when applying its regulations. See In re Van Orden, 383 N.J. Super. 410, 418-19 (App. Div. 2006).

There is a recognized strong public policy favoring the financial protection of a public employee's family. See Eyers, supra, 91 N.J. at 57. Accordingly, decisions have held that public policy militates in favor of assuring support for financially dependent ex-spouses by permitting equitable distribution of pension funds despite statutory language exempting pension payments from court process. See Cleveland v.

17

Bd. of Trs., Police and Firemen's Ret. Sys., 229 N.J. Super.
156, 159-160 (App. Div. 1988).  Public policy also favors a
public employee's ability to provide adequately for the well-
being of his disabled child after his death.

### B.

Federal public assistance programs provide aid and services
to permanently disabled individuals whose income does not exceed
a specified amount.  See 42 U.S.C.A. § 1382(a)-(b).  For
example, New Jersey Medicaid provides coverage for New Jersey
residents who are determined to be blind or disabled by either
the Social Security Administration or the Division of Medical
Assistance and Health Services.  See N.J.A.C. 10:71-3.10
to -3.12.  The Social Security Administration's SSI program also
provides assistance to blind or disabled persons.  42 U.S.C.A.
§ 1381a.  Both programs are available only to persons whose
gross monthly income and resources fall below a statutorily
established threshold.  See 42 U.S.C.A. § 1382(a)(1)(B), (3)(B).
In those contexts, gross monthly income is comprised of, among
other things, the total social security income, veterans'
benefits, pensions, dividends, and payments from trust funds
received.  See N.J.A.C. 10:71-4.4, :71-5.1 to -5.4.

The PFRS survivors' death benefit that Anthony would
receive if his father predeceases him, so long as it is paid
directly to Anthony, would be considered income and could impair

18

his receipt of public assistance.  Even if a check payable to Anthony were deposited into a trust fund established for Anthony, the benefits check would be treated as income to him and would impact his eligibility for public assistance.  See N.J.A.C. 10:71-5.1.  Any direct payments to Anthony, even if later transferred into a trust, will count towards his income for that year and disqualify him from receiving various forms of public assistance.  That is so because trust fund assets are normally considered income for the purpose of assistance eligibility.  See, e.g., 42 U.S.C.A. § 1396p(d)(1)-(3) (stating all trust assets except those held in trusts established under § 1396p(d)(4) are considered resources available to individual).  However, Congress and our Legislature have created an exception to that rule for special needs trusts established in accordance with 42 U.S.C.A. § 1396p(d)(4).  See N.J.S.A. 3B:11-37.

The loss of public assistance is undoubtedly detrimental to the well-being of a disabled person, particularly when the income received from a pension alone does not cover the cost of needed medical services.  Such a result runs counter to the Legislature's expressed intent to provide for the well-being of a PFRS member's surviving beneficiaries.

However, as the amici explain in detail, that consequence may be avoided through the use of a special needs trust.  SNTs are legitimate planning tools as recognized by this Court.  "A

19

special needs trust is a trust that is intended to allow a disabled individual to maintain eligibility for certain needs-based government benefits." J.B. v. W.B., 215 N.J. 305, 322 (2013). SNTs may be "an effective tool to plan for the future of a disabled minor or adult child." Id. at 324. Congress has authorized the use of certain forms of SNTs designed to avoid the loss of public assistance provided to a permanently disabled person. See 42 U.S.C.A. § 1396p(d)(4). Our Legislature subsequently endorsed the use of SNTs for that purpose as well. See N.J.S.A. 3B:11-36 to -37. The Legislature specifically noted that "[i]t is in the public interest to encourage persons to set aside amounts to supplement and augment assistance provided by government entities to persons with severe chronic disabilities." N.J.S.A. 3B:11-36(a). In passing N.J.S.A. 3B:11-37(a), the Legislature embraced SNTs to the fullest extent permitted by federal law.

In contrast to a special needs trust established by third-parties using their own resources for the benefit of another, self-settled or first-party SNTs are funded solely by assets owned by the beneficiary, or by assets to which the beneficiary is legally entitled. See Walter L. Nossaman & Joseph L. Wyatt, Jr., Trust Administration & Taxation § 24.02A[1] (2014). In a self-settled SNT, the trust stands in the place of the disabled beneficiary, and the assets held by the trust are held solely

for the benefit of the disabled beneficiary without counting as income for the purposes of public assistance. See 42 U.S.C.A. § 1382b(e)(6)(C)(i); J.B., supra, 215 N.J. at 322. In a circumstance such as Anthony's, the amici and Saccone maintain that a self-settled SNT established under 42 U.S.C.A. § 1396p(d)(4)(A) may be used to effectuate the Legislature's intent in respect of the monthly survivors' pension.

A (d)(4)(A) SNT is

> [a] trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by a parent . . . if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan.
>
> [42 U.S.C.A. § 1396p(d)(4)(A).]

A (d)(4)(A) SNT is established for the sole benefit of the beneficiary and is irrevocable. See N.J.A.C. 10:71-4.11(g)(1)(ii), (viii). The trust res may consist of the beneficiary's assets, which in this context may include income and financial resources. See 42 U.S.C.A. § 1396p(h)(1). A (d)(4)(A) SNT may be established, as in Anthony's case, by a parent; however, the disabled beneficiary is, in most cases, considered to be the trust's grantor for income tax purposes. See 26 U.S.C.A. §§ 673-677. Further, as required by the authorizing federal statute, upon the death of the beneficiary,

21

state medical assistance providers are reimbursed from any remaining trust res up to the total amount spent on the beneficiary's medical care. 42 U.S.C.A. § 1396p(d)(4)(A); accord N.J.A.C. 10:71-4.11(g)(1)(xii). Therefore, a (d)(4)(A) SNT is considered a first-party trust because only assets to which the beneficiary is entitled are used to establish the trust and the beneficiary is the only person permitted to receive the benefit of the trust funds. The trust res is not considered to be income or an asset for the purposes of public assistance. See 42 U.S.C.A. § 1382b(e)(6)(C)(i); J.B., supra, 215 N.J. at 322.

C.

Saccone's inartfully worded request to "change the beneficiary" of the survivors' death benefits due to Anthony under the PFRS to an SNT benefiting Anthony started this dispute down the wrong analytic path. Saccone's request should have been evaluated for what it was in substance, not in form. It was not truly a change-in-beneficiary designation, as the Board initially treated it. That characterization led to an easy rejection of the request as one beyond Saccone's ability because survivors' death benefits are not assignable. The 1967 legislative amendment ensured that such benefits go to a deceased retired PFRS member's survivors. In other words, the benefits belong to Anthony. They are not Saccone's to assign.

22

In its substance, however, the request merely asked the Board to recognize and treat a proper self-settled or first-party SNT as the equivalent of Anthony, if and when the Board had to fulfill the legislative promise of N.J.S.A. 43:16A-12.1(a) and provide a survivors' benefit to Anthony. In executing a legislative scheme that is entrusted to it, a government agency is expected to administer the scheme with the underlying legislative policies foremost in mind. That principle applies in force when the legislative scheme is remedial in nature. See In re Adoption of N.J.A.C. 5:96, 215 N.J. 578, 615-16 (2013) (noting agency not free to abandon remedial approach applicable under statute); Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 90 (2006) (noting remedial statutes should be interpreted liberally); Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 173 (2006) (stating statute's provisions must be construed "liberally to accomplish the Legislature's broad remedial goals").

Properly viewed, the question on appellate review is whether the Board acted arbitrarily, capriciously, or unreasonably in declining to consider an SNT as Anthony's proposed equivalent, thereby allowing him to receive his future survivors' death benefit, should his father predecease him, through a vehicle that prevents the benefit from becoming a financial liability. So viewed, the Board's response is

23

contrary to the legislative policy underlying the statute the Board was charged with executing for the benefit of its members.

Paying Anthony's share of survivors' benefits to an SNT established for the sole benefit of Anthony is equivalent to paying those benefits to Anthony himself. It is not an assignment of those benefits at all. That is so because an SNT established pursuant to 42 U.S.C.A. § 1396p(d)(4)(A) is for the sole benefit of the disabled person. Moreover, by definition, any assets remaining in a (d)(4)(A) trust following the life of the disabled person must be repaid to the state. Thus, there can be no meaningful concern that allowing Anthony's first-party SNT, created pursuant to 42 U.S.C.A. § 1396p(d)(4)(A), to receive his share of survivors' benefits will somehow allow Saccone to divert the survivors' benefits to any individual other than his spouse and his children.

Simply put, no one other than Anthony would benefit from such an SNT. As a result, an SNT of this particular form in Anthony's name is an extension of Anthony. The statute thus does not bar the use of such an SNT to protect the ability of a retired PFRS member's disabled child to receive the survivors' benefits and maintain his or her access to public assistance.

Creating an SNT and making it the vehicle for, or beneficiary of, Anthony's survivors' benefits is the only way to protect Anthony's financial interest and further the

24

Legislature's avowed public policies in favor of both SNTs and survivors' benefits. In that vein, the Appellate Division erroneously concluded that the Legislature's failure to explicitly sanction so-called "Miller trusts" established by 42 U.S.C.A. § 1396p(d)(4)(B) implicitly suggested that all self-settled SNTs were impermissible under New Jersey law. That conclusion is not compelled by the absence of any such trusts in N.J.S.A. 3B:11-37. There is another logical explanation for the absence of Miller trusts from New Jersey's SNT statute. As amicus NAELA explained, the Legislature simply was unable to authorize Miller trusts because federal law prohibits the use of such trusts in states, like New Jersey, that make use of a medically needy Medicaid plan. See 42 U.S.C.A. § 1396p(d)(4)(B) (permitting use of Miller trusts to avoid Medicaid cap in states that do not make use of medically needy Medicaid plan); N.J.A.C. 10:71-4.11(h) (indicating that New Jersey "cover[s] services in nursing facilities under the medically needy component of the Medicaid program"). There is no compelling reason to conclude that the Legislature meant sub silentio to prohibit the use of a self-settled or first-party SNT created pursuant to 42 U.S.C.A. § 1396p(d)(4)(A). Indeed, N.J.S.A. 3B:11-37 expressly authorizes (d)(4)(A) SNTs.

In sum, we conclude that the survivors' benefits statute, like the entire PFRS pension scheme, should be interpreted in

25

light of its remedial character. The statute should be construed in a manner that furthers its fundamental purpose. See, e.g., Wilson, supra, 209 N.J. at 572 (striving to avoid absurd results, driven by narrow adherence to literal language, which are "at odds with the overall statutory scheme").

The survivors' statute exists for the purpose of benefiting the spouse and children of deceased PFRS members. Yet, disabled persons, such as Anthony, are financially impaired by the Board's and the Appellate Division's strict construction of the survivors' benefits statute. As Saccone and the amici convincingly have demonstrated, Anthony will almost certainly become ineligible for several forms of public assistance should his share of the survivors' benefits automatically vest with him in the normal course of benefits payments. We cannot conclude that the Legislature would abide a construction of N.J.S.A. 43:16A-12.1(a) that disserves the very people it was intended to help.

The Board's strict view of how to implement the word "child" in the survivors' benefits statute when dealing with the circumstances of an SSI-eligible disabled child of a PFRS retiree forces this class of beneficiary into an untenable situation. The Board's action requires a disabled child of a PFRS retiree to choose between abandoning the survivors' benefits earned by his parent or forgoing public assistance

26

programs for his medical needs.  That choice is unnecessary and unwarranted.  The Board advances no legitimate public policy through its rigid interpretation.  Both the federal government's SSI and related medical assistance programs and New Jersey's SNT statutes permit the use of self-settled (d)(4)(A) SNTs.  Ultimately, the Board's determination foists what is essentially a forfeiture of survivors' benefits on disabled individuals such as Anthony.

All that must be determined is whether a first-party SNT established for Anthony under § 1396p(d)(4)(A) may stand in his place as the beneficiary to whom survivors' benefits are due under N.J.S.A. 43:16A-12.1(a).  We conclude that it may.

We construe the reference to "child" in N.J.S.A. 43:16A-12.1(a) to be equivalent to a first-party SNT established for a disabled child, such as Anthony, pursuant to 42 U.S.C.A. § 1396p(d)(4)(A).  The Board erred in not accommodating Saccone's request, essentially, to reform the manner in which Anthony would receive any future survivors' benefits by making the survivors' benefits paid into such a first-party SNT for Anthony.

We hold that the Board's contrary determination, affirmed by the Appellate Division, was arbitrary, capricious, and unreasonable.  Our holding requires that the Board's

27

determination be set aside and the matter remanded for further administrative action consistent with this opinion.

                                    V.

The judgment of the Appellate Division is reversed and the matter is remanded to the PFRS Board for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER, JUSTICE FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUDGE CUFF (temporarily assigned) filed a separate, dissenting opinion in which JUSTICE PATTERSON joins. JUSTICE ALBIN did not participate.

THOMAS SACCONE,
     Plaintiff-Appellant,
          v.
BOARD OF TRUSTEES OF THE
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,
     Defendant-Respondent.

     JUDGE CUFF (temporarily assigned), dissenting.

     This appeal presents the narrow issue of whether the disabled son of a retired member of the Police and Firemen's Retirement System (PFRS) may have his survivors' benefits paid into a first-party special needs trust (SNT) created for him pursuant to federal law.  The majority holds that he may, reasoning that the PFRS Board of Trustees (Board) and the Appellate Division adopted a rigid interpretation of the PFRS survivors' benefits statute that undermines the statutory purpose of a survivors' benefit to a disabled child.  Ante at ___ (slip op. at 2).  In doing so, the majority reverses the administrative action taken by the Board, as well as the decision of the Appellate Division, which concluded that the Board's determination was not arbitrary, unreasonable, or capricious.  Id. at ___, ___ (slip op. at 2-3, 8).

This appeal presents a straight-forward question of statutory interpretation. This appeal is not about the good faith of Thomas Saccone, the retired PFRS member. This appeal is not about the wisdom and benefits of an SNT for a disabled, dependent child. Indeed, we have acknowledged the importance of such trusts in any plan for the financial security of a disabled, dependent child and have endeavored to set forth an analytical framework to further such planning when the parents of a disabled, dependent child have divorced. J.B. v. W.B., 215 N.J. 305, 324 (2013).

While I agree with the majority's conclusion that the Board's application of N.J.S.A. 43:16A-12.1(a) led to an unfortunate result in this case, the plain language of the statute prohibits a PFRS member from designating the beneficiary of his or her survivors' benefits. The public policy favoring the establishment of SNTs should not supersede the plain language of the statutory provisions which prohibit a retiree from designating a beneficiary other than his spouse or child. Further, the various amendments made to the statute in 1967 evince an unequivocal legislative intent to exclusively limit the survivors' benefit. Therefore, I respectfully dissent and would affirm the Appellate Division judgment. Any changes to the statute which would allow a retiree to designate an SNT as a beneficiary are best left to the Legislature.

2

The question before this Court is one of statutory interpretation. The goal of statutory interpretation is to "discern and effectuate the Legislature's intent." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418 (2009) (quoting State v. Brannon, 178 N.J. 500, 505 (2004)). "The plain language of the statute is [the Court's] starting point." Ibid. The Court applies "the generally accepted meaning of the words used by the Legislature and strive[s] 'to give effect to every word.'" Ibid. (citations omitted). However, words and phrases should not be read in isolation; rather, they should be read in proper context, in relation to one another, to give meaning to the whole of the statute. See Burnett v. Cnty. of Bergen, 198 N.J. 408, 424-25 (2009).

If the plain language of the statute is unambiguous, the meaning is clear and the interpretive process is complete. Patel, supra, 200 N.J. at 419; State v. Gelman, 195 N.J. 475, 482 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). In interpreting a statute, we presume that the Legislature acted to create a logical scheme and should not look to impute avoidable contradictions. State v. Hudson, 209 N.J. 513, 542 (2012) (citing State v. Haliski, 140 N.J. 1, 9 (1995)). That is, we should not give a strained interpretation so that one statutory clause is hopelessly at odds with another. Id. at

541-42. "[I]f the statutory language is susceptible to 'more than one plausible interpretation,'" then we can "turn to such extrinsic aids as legislative history for help in deciphering what the Legislature intended." Gelman, supra, 195 N.J. at 482 (quoting DiProspero, supra, 183 N.J. at 492-93). If the statute is ambiguous or silent on a particular point, a court should not substitute its judgment for that of the agency, provided the agency's determination is "'based on a permissible construction of the statute.'" Kasper v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 164 N.J. 564, 581 (2000) (quoting 2 Am. Jur. 2d Admin. Law § 525 (1994)).

## II.

The police and fireman retirement program, N.J.S.A. 43:16A-1 to -68, was established to create "a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from a fund maintained upon a sound actuarial basis." Ante at ___ (slip op. at 13); accord N.J.S.A. 43:16A-2. PFRS is defined as "a pooled annuity defined benefit fund" in which "[o]nly a member's contributions are attributable to the member" and "[a]ll of the remaining assets are 'pooled' for the entire system." LaSala v. LaSala, 335 N.J. Super. 1, 7 (App. Div. 2000), certif. denied, 167 N.J. 630 (2001).

4

There is no ambiguity in the language of the statute. On the death of a member, the spouse and any qualifying child or children receive the prescribed survivors' benefits. Although I discern no ambiguity in this language, the legislative history of survivors' benefits for PFRS members underscores this interpretation and helps shed light on the considerations taken into account by the Legislature.

In 1920, the Legislature enacted the Pension Act of 1920, L. 1920, c. 160, which established a single uniform retirement law, covering all police and firemen. In 1944, due to the "explosive" increase in municipal deficiency appropriations, the Pension Act was amended to "reduce[] the existing liabilities through the reduction of pension benefits, eliminat[e] additional liabilities through the closing of membership to the funds, and rais[e] . . . assets through increased contributions by members, municipalities, and State, substantially improv[ing] the financial status of the 1920 funds." Report of the N.J. Advisory Comm'n on Local Police & Firemen's Pension Funds 11, 13 (Feb. 1, 1952). The statewide PFRS was established, which covered all new police and fire employees.

When PFRS was first created in 1944, it allowed members a right to elect one of three optional forms of retirement and designate any beneficiary as the recipient of his retirement allowances. N.J.S.A. 43:16A-12. Pursuant to the statute, the

5

PFRS member would receive a reduced retirement allowance in exchange for the survivors' benefits. Ibid. Thus, the member determined how and to whom such payment would be assigned.

In 1967, the Legislature repealed N.J.S.A. 43:16A-12, thereby removing all three retirement options. L. 1967, c. 250, § 31. In lieu of the options, the Legislature created a survivors' pension benefit, N.J.S.A. 43:16A-12.1, which provides a life annuity to the member's surviving spouse and/or child "without additional contributions by the member or reduction in the member's retirement benefits." LaSala, supra, 335 N.J. Super. at 8. N.J.S.A. 43:16A-12.1(a) provides:

> Upon the death after retirement of any member of the retirement system there shall be paid to the member's widow or widower a pension of 50% of final compensation for the use of herself or himself, to continue during her or his widowhood, plus 15% of such compensation payable to one surviving child or an additional 25% of such compensation to two or more children; if there is no surviving widow or widower or in case the widow or widower dies or remarries, 20% of final compensation will be payable to one surviving child, 35% of such compensation to two surviving children in equal shares and if there be three or more children, 50% of such compensation would be payable to such children in equal shares.

Pursuant to the statute, a set percentage of a member's death benefits is automatically provided to the member's surviving spouse and/or child, without requiring additional contributions or reductions of the member's retirement benefits. See LaSala,

6

, 335 <u>N.J. Super.</u> at 8. The statute establishes greater benefits to both the member and his or her family. By opting for a mandatory benefit to the surviving spouse and/or child, the member may not nominate a beneficiary. The statute was amended again in 1971, 1985, 1991, and 1999. At none of these times was the language of the statute changed to allow for the member to change the beneficiary to any person or entity other than the surviving spouse and/or child.

### III.

The majority reasons that the plain language of the statute is at odds with the legislative intent and policy purposes of the statute. <u>Ante</u> at \_\_\_, \_\_\_ (slip op. at 2, 26). It states that the Board's "strict view" on how to interpret the word "child" would force disabled children of PFRS retiree's into "an untenable situation" where the child must choose between the survivors' benefit and public assistance programs. <u>Id.</u> at \_\_\_, \_\_\_ (slip op. at 2, 26-27). Further, the majority contends that "[n]o legitimate public policy is advanced by the Board's rigid interpretation." <u>Id.</u> at \_\_\_, \_\_\_ (slip op. at 2, 27). However, one of the central tenets of statutory interpretation provides that the Court should apply the generally accepted meaning of the words used by the Legislature. <u>Patel</u>, <u>supra</u>, 200 <u>N.J.</u> at 418. To infer that the Legislature intended to include first-person SNTs in its definition of "child" requires a substantial

7

leap which is not supported by our principles of statutory interpretation.

Additionally, words and phrases should not be read in isolation; rather, they should be read in proper context, in relation to one another, to give meaning to the whole of the statute.  See Burnett, supra, 198 N.J. at 424-25.  In this case, the statutes which work together with N.J.S.A. 43:16A-12.1(a) similarly prevent the member from assigning his benefits.  For example, the section titled "Exemption from taxes, garnishment, etc.; assignment of group insurance policy rights and benefits," N.J.S.A. 43:16A-17, provides in relevant part:

> The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions, any benefit or right accrued or accruing to a person under the provisions of this act and the moneys in the various funds created under this act . . . shall be unassignable.

Likewise, the PFRS regulation titled "Beneficiary designation; pension contributions," N.J.A.C. 17:4-3.5(b), prohibits a retiree from designating a primary or a contingent beneficiary as the recipient of the retiree's pension benefits.  It states: "A retiree cannot designate a primary or a contingent beneficiary for the receipt of the retiree's accumulated pension contributions in the event of the retiree's death."  N.J.A.C. 17:4-3.5(b).

8

The legislative history of the PFRS survivors' benefit statute, specifically the repeal of N.J.S.A. 43:16A-12 and the removal of its elective language in its replacement, N.J.S.A. 43:16A-12.1(a), further evinces the Legislature's intent to divest the retiree's ability to designate a beneficiary and to exclusively limit the pension benefit to surviving spouses and children. The PFRS regulation, N.J.A.C. 17:4-3.5(b), and N.J.S.A. 43:16A-17 are consistent with the restrictive language of N.J.S.A. 43:16A-12.1(a).

The majority relies on the public policy of providing for the financial well-being of a member's surviving spouse and children. Ante at ___ (slip op. at 16-18). It is true that our Court may intervene "in those rare circumstances in which an agency decision is clearly inconsistent with its statutory mission or with other State policy." Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995). "Pension legislation is remedial in nature and should be liberally viewed in favor of the employee." In re Van Orden, 383 N.J. Super. 410, 420-21 (App. Div. 2006). Thus, "courts should keep in mind that pension statutes are designed to benefit the public employee." Id. at 421.

However, the majority's broad statement of public policy is at odds with the plain language of the statute, which implements the legislative intent to restrict the retiree's ability to

9

designate a beneficiary.  I am not unsympathetic to the member's effort to bolster the financial security of his disabled, dependent son.  In the end, however, the ability to substitute an SNT for the exclusive benefit of a member's child is a matter for the Legislature.

## IV.

I would affirm the Appellate Division.  Therefore, I respectfully dissent.

JUSTICE PATTERSON joins in this opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-49__ SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

THOMAS SACCONE,

    Plaintiff-Appellant,

       v.

BOARD OF TRUSTEES OF THE
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Defendant-Respondent.

DECIDED _____September 11, 2014_____
       Chief Justice Rabner       PRESIDING
OPINION BY _____Justice LaVecchia_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____Judge Cuff_____

| CHECKLIST | REVERSE AND REMAND | AFFIRM |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | ---------------------- | ------------------- |
| JUSTICE PATTERSON | | X |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | | X |
| TOTALS | 4 | 2 |