# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3920-24

TIFFANY PHILLIPS,

    Plaintiff-Appellant,

v.

BRINK'S INCORPORATED,
NELSON ALVAREZ, and
ELIZABETH GRAMIGNA,

    Defendants-Respondents.

_____

Submitted May 14, 2026 – Decided May 27, 2026

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2888-25.

Castronovo & McKinney, LLC, attorneys for appellant (Thomas A. McKinney, of counsel and on the briefs; Anaïs V. Paccione, on the briefs).

Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys for respondents (Michael Nacchio, Jocelyn A. Merced, Erin N. Donegan, and Michael C. Salvo, on the brief).

PER CURIAM

Plaintiff Tiffany Phillips appeals from a July 7, 2025 trial court order dismissing count two of her complaint, which alleged violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, based on race discrimination, and directing her to arbitrate that claim. We reverse for the reasons expressed in this opinion.

On April 14, 2025, plaintiff sued defendants Brink's Incorporated, Nelson Alvarez, and Elizabeth Gramigna, Esq. According to the complaint, plaintiff began working for Brink's in 2018. In late 2022, a coworker showed her a text message chain, which included other Brink's employees. Those employees used derogatory racial slurs such as "n[****]r" and "monkey" to refer to Black employees. The employees also sent pictures of monkeys in reference to Black employees. In addition, they used terms such as "b[***]h" and "c[**]t" to refer to female employees.

Plaintiff alleged the texting chain also included messages specifically targeting her. A male employee wrote a message stating, "I haven't gone down on them yet. So not sure if male or female. I hope male with the exception of [plaintiff] lol." Another male employee sent a message stating, "You better give her that work !!!" Plaintiff interpreted the statement as referencing sexual

2

intercourse. After that text, employees sent pictures of black cats, which she interpreted as depicting her. A male supervisor wrote a text stating, "Andy is trying to smash [plaintiff] in her big ass nostrils right now. Instead of [three] holes to hit it, she got [five] holes."

According to plaintiff, she reported the messages to one of her superiors, but he resigned a few weeks later. Plaintiff sent the text messages to another employee, who then forwarded them to Brink's human resources department. She alleged: Brink's; Alvarez, who became her supervisor after the other supervisor's resignation; and Gramigna, who investigated the allegations on behalf of Brink's, failed to take any action concerning her complaints.

On March 21, 2025, Brink's terminated plaintiff. Her termination letter stated Brink's investigation concluded she was engaged in a "culture of favoritism." Plaintiff contended her termination was unlawful retaliation for her complaints about harassment and discrimination.

Plaintiff's complaint alleged several other Brink's employees, who were referenced in the texts, also made complaints and subsequently filed lawsuits. She wrote emails in support of the other employees' suits and became a key witness in their cases.

3

Count one of plaintiff's complaint alleged a hostile work environment due to her race or sex because the comments in the text message chain would not have occurred but for those traits. In count two, plaintiff alleged race discrimination under the LAD for being terminated because she was a Black woman. Count three alleged retaliation under the LAD because she was terminated after she complained about the hostile work environment. Count four alleged Alvarez and Gramigna aided and abetted in the harassment, discrimination, and retaliation in violation of N.J.S.A. 10:5-12(e).

Brink's and Alvarez moved to dismiss the complaint and compel arbitration.[1] Their motion attached three iterations of a Mutual Arbitration Agreement (the arbitration agreement) plaintiff signed in 2021, 2023, and 2024. In opposition, plaintiff's certification acknowledged she received certain documents from Brink's, but claimed she was unaware of the arbitration agreement, no one explained it to her or gave her the ability to opt-out, and she did not know or understand the arbitration agreement waived her right to sue under the LAD.

Brink's and Alvarez asserted plaintiff's race-based discrimination, harassment, and retaliation claims, as well as the aiding and abetting claim, were

---

[1] Gramigna did not participate in the litigation at the trial or appellate level.

subject to arbitration. However, they conceded the Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401-02, prohibited arbitration of plaintiff's sex-based harassment, discrimination, and retaliation claims. They requested the court stay the proceedings pending arbitration.

Plaintiff argued her race- and sex-based LAD claims were inextricably intertwined and could not be bifurcated. She reiterated there was no mutual assent to the arbitration agreement and requested the ability to conduct limited discovery on this issue.

On July 7, 2025, the trial court entered an order denying the motions to dismiss except for count two of the complaint, which the court dismissed and ordered to proceed to arbitration. As to count two, the court found the arbitration agreement enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and State law, because it contained unambiguous language, explicitly warning plaintiff she was waiving the right to file a lawsuit in court and agreeing to submit all claims to arbitration. It also noted the agreement had a clear opt-out procedure and plaintiff had signed it on three occasions.

Citing Mera v. SA Hospitality Group, LLC, 675 F. Supp. 3d 442 (S.D.N.Y. 2023), aff'd on other grounds and rev'd in part, 2025 WL 3202080

A-3920-24

(S.D.N.Y. Nov. 17, 2025), the court concluded "the EFAA does not intend to exclude from arbitration claims that are unrelated to . . . sex[-]based claims and are otherwise arbitrable." The court concluded counts one, three, and four of plaintiff's complaint "incorporate and include factual allegations that inextricably intertwine sex[-] and gender[-]based discrimination, hostility[,] and retaliation." However, count two was "narrow and specific and assert[ed] only a claim for race discrimination."

## I.

Plaintiff argues her sex- and race-based claims are inextricably intertwined, and the latter should not have been severed and sent to arbitration. She asserts the severance of her claims could lead to potential confusion, inconsistent outcomes, and waste of judicial resources creating an unjust result in contravention of the EFAA, which prohibits the arbitration of all claims relating to her claims of sexual harassment, discrimination, and retaliation. Plaintiff contends the EFAA overrides the FAA's general policy of favoring arbitration to resolve disputes. Alternatively, she asserts the entire controversy doctrine favors one tribunal deciding the whole dispute.

A-3920-24

Plaintiff claims the court improperly considered the arbitration agreement, even though it was not referenced in the pleadings. She reiterates her claims the arbitration agreement lacked mutual assent.

II.

We review de novo a trial court's decision on a motion to dismiss a complaint for failure to state a claim under Rule 4:6-2(e). W.S. v. Hildreth, 252 N.J. 506, 518 (2023). The grant or denial of a motion to compel arbitration is also reviewed "de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)). Questions of statutory interpretation are subject to de novo review. W.S., 252 N.J. at 518.

In interpreting a federal statute, "[o]ur 'overriding goal' is to determine Congress's intent." State v. Amer, 254 N.J. 405, 421-22 (2023) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). "The 'best indicator' of legislative intent 'is the statutory language.'" W.S., 252 N.J. at 519 (quoting State v. Lane, 251 N.J. 84, 94 (2022)). We will "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (quoting DiProspero v.

Penn, 183 N.J. 477, 492 (2005)).  "When the plain language of a statute is clear and unambiguous, we apply the law as written."  Ibid.; see also Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 390 (2014) (Cuff, J., dissenting) ("If the plain language of the statute is unambiguous, the meaning is clear and the interpretive process is complete.").

The EFAA, effective March 3, 2022, amended the FAA to provide:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
>
> [9 U.S.C. § 402(a).]

The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).

In McDermott v. Guaranteed Rate, Inc., 483 N.J. Super. 264 (App. Div. 2025), we recently had occasion to interpret the EFAA in a matter like this case. There, McDermott alleged:  gender-based pay discrimination; sexual- and gender-based harassment and hostile work environment; and constructive discharge under the LAD.  Id. at 275.  She also alleged claims related to her

8

wages, breach of contract, and unfair competition. Ibid. Another plaintiff brought claims for discrimination, hostile work environment and wrongful termination based on pregnancy, failure to accommodate, sexual harassment, and gender discrimination. Id. at 281.

In both cases, the defendants moved to compel arbitration. Id. at 276, 281. The respective trial courts bifurcated the cases, ruling the sexual harassment and hostile work environment counts should remain in the Law Division, but the non-sexual harassment claims should proceed in arbitration. Id. at 276-77, 281-82.

We held the EFAA applied to both cases because each complaint included a viable claim for violations of the LAD related to a hostile work environment and sexual harassment. Id. at 291-92. All the claims should have been deemed non-arbitrable because

> the plain and unambiguous language of the EFAA . . . invalidates pre-dispute arbitration agreements with respect to an entire "case" relating to sexual harassment or assault, rather than only to discrete claims. Congress deliberately used the broader term "case," and courts interpreting the EFAA have widely agreed that its protection applies to all claims within such an action.
>
> [Id. at 292.]

The EFAA, made it "clear that once a case is filed under applicable law and relates to a sexual assault or sexual harassment dispute as defined, . . . an arbitration agreement becomes unenforceable" as to the entire case. Ibid.

We rejected the argument a claim had to be "inextricably intertwined" with a sexual harassment claim to fall under the scope of the EFAA. Id. at 296-97. The plaintiffs' claims were properly joined as they all arose out of their employment. Ibid. There was a nexus between the sexual harassment and non-sexual harassment claims, as the latter were "materially and substantially informed by the nature of the sexual-harassing employment relationship." Id. at 297.

We further observed Congress amended the FAA to note that notwithstanding any provision contained therein, the EFAA applied. Id. at 298-99. Thus, the EFAA "overrides the FAA on this issue to provide that an arbitration agreement will become unenforceable as to an entire case that is filed under applicable law and relates to a sexual harassment dispute." Id. at 299.

Here, neither the parties nor the trial court had the benefit of McDermott because it was decided after the briefing of this appeal. However, pursuant to McDermott, we conclude none of plaintiff's claims should have been subject to arbitration as a matter of law. The court misapprehended the law when it

10

bifurcated the matter and compelled arbitration of the race-based claims because they are a part of plaintiff's case and relate to her sexual discrimination claims; having arisen from her sexually harassing employment relationship. Plaintiff's race-based claims rely on the same underlying facts as her sex-based claims. Her complaint alleged that text message chains included derogatory names, pictures of black cats, and innuendos, all of which contained racial and sexual undertones. Plaintiff's sexual and racial harassment, discrimination, and retaliation claims are rooted in both her race and gender.

For these reasons, we reverse the part of the order dismissing count two of plaintiff's complaint. Finally, because we have decided the arbitration of plaintiff's claims is not possible, we need not reach her remaining arguments.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3920-24