**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2657-15

LATASHA WALKER-
HARRISON,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted March 24, 2025 – Decided April 1, 2025

Before Judges Sabatino and Jablonski.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx9405.

Schumann Halon Margulies LLC, attorneys for appellant (Nirmalan Nagulendran, on the briefs).

Gebhardt & Kiefer, PC, attorneys for respondent (Leslie A. Parikh, on the brief).

PER CURIAM

Petitioner Latasha Walker-Harrison, a retired senior corrections officer of the New Jersey Department of Corrections ("DOC"), appeals the December 14, 2015 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System ("PFRS") forfeiting her State pension. The Board forfeited appellant's pension because her public service was rendered dishonorable due to her participation in a criminal conspiracy to smuggle a cell phone into the prison for the use of an inmate. Appellant was tried by a jury and convicted of second-degree criminal conspiracy. The court sentenced her to a five-year custodial term, of which she served sixteen months.

Appellant contends the Board's decision was an abuse of discretion because it allegedly misapplied the multi-factor criteria of Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982), in finding that her misconduct warranted total forfeiture. She asserts that a conviction for conspiring to provide an inmate with a cell phone, after twenty years of otherwise unblemished service, does not warrant total forfeiture. In that regard, she relies on the recommended disposition of an administrative law judge ("ALJ"), who found total forfeiture inappropriate and instead recommended that appellant receive only a partial five-year forfeiture.

A-2657-15

Having considered the appeal in light of the evidence in the record, the applicable law, and our limited standard of review, we affirm the final agency determination of total forfeiture. The Board reasonably applied the Uricoli factors in a manner that was justified and supported by the pertinent evidence. The decision was neither arbitrary nor capricious.

I.

The facts underlying appellant's wrongdoing have already been detailed in our unpublished opinion affirming the criminal conviction of her co-defendant, Ardones Livingston. We incorporate those facts by reference here. See State v. Livingston, No. A-1170-12 (App. Div. Sept. 16, 2014).

Appellant had been employed as a corrections officer at the Adult Diagnostic and Treatment Center ("ADTC") through January 2008, when she was removed for allegedly fraternizing with an inmate. She was eventually reinstated pursuant to a settlement agreement, but did not return on site to the workplace.

Appellant's employment with the DOC terminated on October 1, 2009. She applied to the Board for service retirement effective as of that date, based on service time of twenty years and three months. The Board approved her service retirement in January 2010.

A-2657-15

Appellant and Livingston were indicted in October 2010. The State's proofs at the criminal trial established that appellant and Livingston took part in a conspiracy to smuggle a cell phone into the ADTC in exchange for money. In February 2009 Frank Rodriguez, an inmate at the ADTC who had been convicted of sexual assault and other serious crimes, was found to be in possession of a cell phone in violation of prison protocols. Id. at 2. Recordings of telephone conversations played for the jury revealed that Rodgriguez had an ongoing relationship with Traci Baio, a former ADTC employee. Ibid. Rodriguez had instructed Baio to send the phone, referred to as "the toy," to appellant, and he provided Baio with appellant's mailing address. Id. at 3. He also provided Baio with Livingston's phone number, instructing Baio to leave a message saying, "the money will be there by the end of the week." Ibid. Rodriguez told Baio he had paid "them" (referring to appellant and Livingston) the sum of $170 from his facility account and had borrowed an additional $150. Ibid.

A local postmaster testified that appellant picked up a package at the post office on January 8, 2009, consistent with the conspiratorial plans. Ibid. In addition, phone records documented multiple calls between Rodriguez's phone number and those of Livingston and appellant during that period. Ibid.

Shortly thereafter, the cell phone was found in Rodriguez's possession at

the prison.  Id. at 2.  As our previous opinion noted, "[f]or security reasons, the [DOC] strictly prohibits the use of cell phones in a correctional facility like ADTC and neither inmates nor corrections officer may possess them 'within the secured perimeter.'"  Ibid.

The criminal case was tried in June 2012 and the jury found appellant guilty of second-degree conspiracy.  Id. at 1.  In July 2012, the court sentenced appellant to a five-year custodial term.  The sentencing judge summarized appellant's crime as follows:  "[S]he had procured a cell phone and conspired to give it to another active DOC employee to bring into the State prison; and also had a forty-four-minute Valentine's Day conversation with an inmate who had this phone."

Appellant did not appeal her conviction nor sentence.

On August 9, 2013, the Division of Pensions and Benefits suspended appellant's retirement checks due to her incarceration.

Appellant was released in November 2013, having served sixteen months. Appellant continues to claim she had nothing to do with the cell-phone incident, despite the jury's findings and the phone record evidence.

The PFRS thereafter sought a total forfeiture of appellant's pension.  The contested case was referred to an ALJ for hearing.  Appellant was the sole

witness. She continued to maintain her innocence of the phone-smuggling conspiracy. She also emphasized her infraction-free work history. She further noted that she was not actively working at the ADTC at the time of the phone conspiracy. Appellant did concede, however, that "[k]eeping cell phones out of our prisons is a major safety and security issue because inmates who can communicate surreptitiously with associates outside of prison can participate in criminal activity that pose[s] a threat both inside and outside the prison walls."

On September 15, 2015, the ALJ issued a recommended disposition. The ALJ found that appellant had engaged in workplace-related misconduct, as proven at the criminal trial, but that her wrongdoing was not sufficiently egregious to warrant total forfeiture of her pension. Instead, the ALJ recommended a lesser sanction of a partial forfeiture of five years, given appellant's twenty years of otherwise honorable service.

The PFRS took exception to the ALJ's lesser sanction, and the matter was referred to the Board. At its meeting on October 19, 2015, the Board voted to adopt the ALJ's findings of fact but rejected the recommendation of partial forfeiture of appellant's PFRS service and salary credit. Instead, based on the ALJ's factual findings and the Board's analysis of the Uricoli factors,[1] the Board

---

[1] We identify and discuss the Uricoli factors in our analysis in Part II, infra.

voted for total forfeiture.

The Board noted in its decision that our case law does not require that each of the eleven Uricoli factors be weighted equally, and that a pension board may reasonably put more weight on factors seven (the nature of the misconduct or crime), eight (the relationship between the misconduct and the member's public duties), and nine (the degree of moral turpitude or culpability). In taking all the Uricoli factors into consideration, the Board afforded more weight to factors seven, eight, and nine and determined that the balance weighed in favor of a total forfeiture.

The Board explicitly rejected as incorrect the ALJ's characterization of the Uricoli decision as requiring proof of continuous misconduct with multiple incidents before significant service time can be forfeited. The Board recognized that, although appellant was not convicted of an enumerated offense under N.J.S.A. 43:1-3.1 categorically mandating total forfeiture, the Board concluded the statute permits a total forfeiture for a single incident of wrongdoing.

This appeal ensued. The briefing on appeal was delayed for several years due to various reasons, including a substitution of appellant's counsel. In essence, appellant contends the Board's imposition of total forfeiture was excessive, arbitrary, and capricious.

II.

The principles of law and appellate review we must apply are clear. Pursuant to N.J.S.A. 43:1-3(a) "[t]he receipt of a public pension or retirement benefit is . . . expressly conditioned upon the rendering of honorable service by a public officer or employee." N.J.S.A. 43:1-3(b) authorizes the Board to forfeit all or part of a pension benefit where "misconduct occurring during the member's public service . . . renders the member's service or part thereof dishonorable."

In Uricoli, 91 N.J. at 77-78, the Supreme Court developed an eleven-point balancing test to determine the extent to which a public employee's pension should be forfeited when the employee engages in dishonorable service. The Uricoli test was later codified in N.J.S.A. 43:1-3(c), as follows:

> In evaluating a member's misconduct to determine whether it constitutes a breach of the condition that public service be honorable and whether forfeiture or partial forfeiture of earned service credit or earned pension or retirement benefits is appropriate, the board of trustees shall consider and balance the following factors in view of the goals to be achieved under the pension laws:
>
> (1) the member's length of service;
>
> (2) the basis for retirement;

(3) the extent to which the member's pension has vested;

(4) the duties of the particular member;

(5) the member's public employment history and record covered under the retirement system;

(6) any other public employment or service;

(7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;

(8) the relationship between the misconduct and the member's public duties;

(9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations;

(10) the availability and adequacy of other penal sanctions; and

(11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

Additionally, certain crimes automatically result in total forfeiture under N.J.S.A 43:1-3.1, none of which pertain here. Significantly, however, N.J.S.A. 43:1-3.1(e) makes clear that the list of "per se" total forfeiture offenses does not preclude total forfeiture in other instances of serious misconduct.

A-2657-15

We evaluate the Board's application of the <u>Uricoli</u> factors through a deferential lens of appellate review. An administrative agency's determination generally "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys.</u>, 219 N.J. 369, 380 (2014) (quoting <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011)).

Although we review de novo an agency's interpretation of law, <u>Russo</u>, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." <u>Piatt v. Police & Firemen's Ret. Sys.</u>, 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting <u>Saint Peter's Univ. Hosp. v. Lacy</u>, 185 N.J. 1, 13 (2005)). We "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" <u>Circus Liquors, Inc. v. Governing Body of Middletown Twp.</u>, 199 N.J. 1, 10 (2009) (quoting <u>Greenwood v. State Police Training Ctr.</u>, 127 N.J. 500, 513 (1992)). "Such deference has been specifically extended to state agencies that administer pension statutes." <u>Piatt</u>, 443 N.J. Super. at 99.

In light of the deference owed to such determinations, when reviewing administrative sanctions, "the test . . . is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be

shocking to one's sense of fairness.'" In re Herrmann, 192 N.J. 19, 28-29 (2007) (citing In re Polk, 90 N.J. 550, 578 (1982)).

Guided by these principles, we sustain the Board's imposition of total forfeiture based on the facts and context of this matter. In particular, we echo the Board's emphasis on Uricoli factors seven, eight, and nine.

As to factor seven (the nature of the misconduct), the Board reasonably found that factor weighs heavily against appellant because "providing a cell phone to an inmate [is] an extreme violation of an SCO's duty to control the movements of inmates, to prevent inmates' illicit and unmonitored telephone communication, and to protect corrections officers, other inmates and the public." The Board reasonably concluded the ALJ incorrectly weighed this factor in declaring the conduct did not happen to result in any harm. To the contrary, the misconduct was of a serious and harmful nature because the contraband cell phone could have been used in an escape attempt, to attack or threaten a corrections officer, or to commit other misdeeds.

As for factor eight (the relationship of the misconduct to the member's public duties), the Board fairly concluded that factor is entitled to significant weight here because appellant's dishonorable behavior took place while she was still a member in service. Although she was not working on the ADTC premises

11

at the time the cell phone was provided to the inmate, the evidence supports an inference that she used her long-standing employment relationship and personal connections at the prison to advance the illicit goals of the conspiracy.

We also defer to the Board's reliance upon factor nine (the degree of moral turpitude). The Board reasonably highlighted appellant's disregard for the danger in which she placed others by conspiring to provide Rodriguez with the cell phone. In addition, the Board justifiably noted that appellant has shown no remorse nor admitted her misconduct, despite it being plainly substantiated by the phone records and other evidence the State proffered at the criminal trial. Moreover, the trial revealed evidence that appellant shared in a monetary payment in exchange for her role in the conspiracy.

Lastly, the Board expressed ample grounds to depart from the ALJ's recommendation of a lesser sanction of partial forfeiture. The calibration of a disciplinary sanction is within the wide discretion of the agency, which has the perspective of hearing many cases within its administrative docket with varying degrees of severity. See In re Herrmann, 192 N.J. at 37-38. The sanction chosen here, while financially harsh, does not shock the judicial conscience.

To the extent we have not addressed them explicitly, the remaining arguments presented by appellant lack sufficient merit to warrant discussion. R.

2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2657-15