**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3552-22

WAYNE C. CHAN,

     Petitioner-Appellant,

v.

NEW JERSEY DIVISION OF
GAMING ENFORCEMENT,

     Respondent-Respondent.

_____

Submitted November 7, 2024 – Decided December 18, 2024

Before Judges Currier and Paganelli.

On appeal from the New Jersey Department of Law and Public Safety, Division of Gaming Enforcement.

Pem Law, LLP, attorneys for appellant (Charles J. Messina and Leonard S. Spinelli, of counsel and on the briefs; Katherine Szabo, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Louis S. Rogacki, Assistant Attorney General, of counsel; Jennifer K. Russo-Belles, Deputy Attorney General, on the brief).

PER CURIAM

Appellant, Wayne C. Chan, appeals from the Department of Law and Public Safety—Division of Gaming Enforcement's (Division)—decision concluding that Golden Nugget Atlantic City (Golden Nugget) did not commit regulatory violations, by scribing craps table dice or having non-transparent dice, and dismissing his patron's complaint. Because Chan failed to establish the Division's decision was arbitrary, capricious, or unreasonable, we affirm.

On January 14, 2020, Chan filed a patron complaint with the Division. In his complaint, Chan alleged:

> While playing at various craps tables at the Golden Nugget . . ., [he] noticed that the secured dice were tampered with in that they were scribed with the table number on the side of the [four] dots, they were scratched and non-transparent. Each one of the die at the table were all done the same way and at each table. [He] brought this to the attention of the Casino Operations Manager . . . . She responded that the casino has been doing this for years. [He] believe[d] that this [wa]s a violation of N.J.A.C. 13:69E-1.16 et seq., such tampering affects the integrity of each dice throwing them off balance causing unfair play; also in violation of N.J.A.C. 13:69E-1.15, transparent and each side flat and each side with the same texture. The dice utilized by the Golden Nugget . . . are non-transparent and are scribed with the table number on the side causing this violation . . . .

Upon receipt of the complaint, Tina M. Pontari, the Division's investigator, interviewed Karen Lew, Golden Nugget's executive director of

table games. Lew stated Chan had been playing craps at Gold Nugget since 2014, but "she had never spoken to Chan concerning the scribing of the dice." Further, Lew "explained that scribing the dice was an added security measure." Lew stated, "that if a die was thrown off the table, when found[,] it would be identified as the dice currently being used on that specific Golden Nugget craps table."

In addition, Lew explained that "the dice used at Golden Nugget craps tables [we]re manufactured by two . . . separate companies, Gaming Partners International (GPI) and MidWest Game Supply" (MidWest). The day following her interview of Lew, Pontari observed Sherry Larro, the casino shift manager and Li Bo Mei, the casino supervisor, "inspect a new set of five . . . dark blue GPI dice." Pontari observed that "[e]ach die was visually inspected to ensure compliance with the requirements of N.J.A.C. 13:69E-1.15(a)."

Pontari watched Larro complete "a physical inspection of each die using a micrometer, a balancing caliper, a steel set square, and a magnet, as per the requirements of N.J.A.C. 13:69E-1.16."

Pontari then observed Mei take the dice to the table "where he scribed the number '[five]' on the [four] dot side of each die." Pontari then had Larro re-

3

inspect the scribed dice. "The results of the re-inspection were identical to the initial inspection . . . ."

Approximately ten days later, Pontari "observed Joseph Fierro, casino shift manager, and Rosario Catalioti, casino supervisor, inspect a new set of five . . . red MidWest dice." "Each of the die was visually inspected to ensure compliance with the requirements of N.J.A.C. 13:69E-1.15(a)." Pontari then observed Fierro complete "a physical inspection of each die using a micrometer, a balancing caliper, a steel set square, and a magnet, as per the requirements of N.J.A.C. 13:69E-1.16."

Pontari then observed Catalioti take the dice to the table "where he scribed the number '[four]' on the [four] dot side of each die." Pontari then had Fierro re-inspect the scribed dice. Pontari observed "[t]he results of the re-inspection were identical to the initial inspection." Pontari also noted "that the MidWest dice were transparent."

Eight days later, Pontari interviewed Chan. Chan explained that "he had been playing [c]raps at Golden Nugget for 'about three . . . years' and contended that he recently noticed the scribing of the dice." In terms of transparency, Chan explained "the dice were a dark 'maroon' color and he could not see his fingers through them."

4

In June 2023, the Division advised Chan that Golden Nugget's practice of "scribing dice [wa]s a common business practice that [wa]s utilized as an additional security measure." In fact, the Division stated that scribing dice had "been included in [Golden Nugget's] Internal Control since . . . 2011." Moreover, the Division explained that "the practice of scribing dice had been accepted as a common and acceptable business practice by the Casino Control Commission and the Division for more than a decade."

The Division detailed its investigation into Golden Nugget's craps dice. It stated its findings "that both the GPI and MidWest dice were transparent and that while the act of scribing the dice may have caused a de minimis change to the dice, it did not change the condition of the dice." Further, the "de minimis change d[id] not cause any type of 'flaw' or 'defect' that would 'affect the integrity or fairness of the game,'" citing N.J.A.C. 13:69E-1.16(g). Therefore, the Division concluded the "act of scribing d[id] not violate its regulations." The Division closed Chan's complaint.

On appeal, Chan contends the Division's decision must be vacated because: (1) the Division "ignored the unambiguous requirements of the [r]egulations," because dice scribed "with a metal object cannot have identical and flat surfaces across all sides," citing N.J.A.C. 13:69E-1.15(a)(3) and (5);

A-3552-22

and engaging in the scribing practice for years or claiming scribing is a security measure "cannot prevail against the plain language and clear intent of the [r]egulations"; (2) the Division's decision "allows casinos to ignore the plain text of the [r]egulations and the goals of the Casino Control Act [(CCA)], thereby risking public trust and undermining [the] strict standards to all gaming"; (3) the decision "was not based on substantial evidence" because: (a) the investigation failed to include "the dice used by [Golden Nugget] in approximately 2019 when Chan noticed that the dice on the craps table were not transparent," and the investigation of the "brand new" dice failed to consider whether the brand new dice "were the same, or substantially similar to, those used in previous years"; and (b) the investigation ignored the requirements that the "dice must have identical textures and surfaces across all sides, and that all sides must also be perfectly flat"; and (4) the decision "overlook[ed] the need for dice to be transparent, perfectly flat, and exactly identical in surface and texture" and therefore cannot uphold the legislative purpose of strict state regulation.

Our judicial review of quasi-judicial agency determinations is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n., 234 N.J. 150, 157 (2018). "An agency's determination on the merits 'will be sustained unless there

6

is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs. of the Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Ret. Sys., 206 N.J. 14, 27 (2011)).

On appeal, review of administrative actions is limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"In assessing th[e]se criteria, a court must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [person] challenging the administrative action."

Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

In adopting the CCA, N.J.S.A. 5:12-1 to -233; the Legislature, in part, declared it is the State's public policy to assure "public confidence and trust in the credibility and integrity of the regulatory process and of casino operations" and to require "strict State regulation to all . . . practices . . . related to the operation of licensed casino enterprises." N.J.S.A. 5:12-1(b)(6).

The Division is responsible for the implementation of the CCA. See N.J.S.A. 5:12-76. Among a myriad of responsibilities, the Division is to: "[e]nforce the provisions of th[e CCA] and any regulation promulgated [t]hereunder"; "[i]nitiate and decide any actions against licensees or registrants for violation of th[e CCA] or regulations promulgated [t]hereunder . . . ."; and "[r]eceive complaints from the public relating to the conduct of gaming . . . ." N.J.S.A. 5:12-76(a),(h),(q).

N.J.S.A. 5:12-100(e) provides "[a]ll gaming shall be conducted according to rules promulgated by the [D]ivision." As relevant here, N.J.A.C. 13:69E-1.15(a) requires that "each die used in gaming shall":

> (2) Be transparent and made exclusively of cellulose except for the spots, name or trade name of the casino licensee and serial number or letters contained thereon;

(3) Have the surface of each of its sides perfectly flat and the spots contained in each side perfectly flush with the area surrounding them;

. . . .

(5) Have the texture and finish of each side exactly identical to the texture and finish of all other sides;

(6) Have its weight equally distributed throughout the cube and no side of the cube heavier or lighter than any other side of the cube . . . .

Moreover, the regulations provide a multitude of dice integrity measures, N.J.A.C. 13:69E-1.16, including the Division's authority to have dice "remove[d] . . . at any time of the gaming day if there is any indication of . . . flaws, or other defects that might affect the integrity or fairness of the game." N.J.A.C. 13:69E-1.16(g).

We are satisfied the Division conducted a thorough investigation and found that Golden Nugget's dice were transparent and that Golden Nugget's practice of scribing—which was approved many years earlier—did "not change the condition of the dice" nor "cause any type of 'flaw' or 'defect' that would affect the integrity or fairness of the game." The Division's findings were sufficiently supported by the evidence in the record.

Further, in light of the high deference accorded to the Division in regulating casino operations and interpreting the governing regulations, the

Division's decision did not violate legislative policies and was reasonable considering the relevant factors.

Therefore, Chan failed to sustain his burden to establish that the Division's decision was arbitrary, capricious, or unreasonable.

To the extent we have not considered any of Chan's remaining arguments, we deem them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3552-22