**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3554-23

SERGIO TANDOC,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued December 16, 2025 – Decided January 7, 2026

Before Judges Susswein and Chase.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx8271.

Thomas A. Cushane (Cushane, Attorney at Law, S.P.) argued the cause for appellant.

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Thomas R. Hower, on the brief.)

PER CURIAM

Sergio Tandoc appeals from a final agency decision by the Board of Trustees ("Board") of the Police and Firemen's Retirement System denying his application for accidental disability benefits. We affirm.

I.

Tandoc served as a Cinnaminson Township police officer for eighteen years. On November 15, 2017, during Tandoc's regularly scheduled patrol shift, Cinnaminson Police received information regarding a vehicle that had been stolen the night before. Officers were informed that the victim's nephew had stolen the vehicle and was exhibiting suicidal ideation.

While stopped at a traffic light, Tandoc saw the stolen vehicle in a neighboring lane. He verified the vehicle's make, model, and registration and notified dispatch that he intended to initiate a car stop. When the light turned green, the vehicle sped away at high rate of speed, refusing to stop even after Tandoc activated his emergency lights. A high-speed pursuit ensued, with the stolen vehicle traveling approximately sixty to seventy miles per hour and almost crashing multiple times.

As the pursuit continued, Tandoc was joined by another officer. Eventually, the stolen vehicle turned onto Route 130 South, entered the shoulder to avoid traffic, and sped through a red light. At the next intersection, the vehicle

A-3554-23

abruptly veered right, crashed into a telephone pole, bounced off, and collided into the rear of a tractor trailer. The car became lodged underneath the trailer.

Tandoc approached the passenger's side while his colleague approached on the driver's side. Tandoc identified two unconscious occupants—a male driver and a teenage female passenger. He broke the passenger side window with his baton and, after discerning a weak pulse, cut her seatbelt. However, because the dashboard was pinning the passenger in, Tandoc was unable to remove her from the vehicle. He then stepped back to allow the EMTs to do their job, but the passenger was pronounced dead at the scene.

Immediately thereafter, Tandoc told his superior officers that he felt responsible for the young girl's death and later testified "[i]f I never saw the vehicle[,] they never would have ran and she would still be alive today." With his employer's assistance, Tandoc filed for workers' compensation.

While out of work, Tandoc began seeing a psychologist, Michael Collis, Ph.D. Tandoc testified he was experiencing depression, anxiety, frustration, nightmares, moodiness, sleeplessness, and anger. Assessments conducted by Dr. Collis indicate that Tandoc was suffering from severe depression, anxiety, and post-traumatic stress disorder ("PTSD"). Over the course of twenty-five sessions—between November 30, 2017, and July 24, 2018—Dr. Collis noted

3

Tandoc's progress in treatment as "limited" or "unchanged" after every session. When Tandoc's workers' compensation treatment ran out, he was discharged from Dr. Collis's care; however, Tandoc did not feel comfortable resuming police work.

Tandoc then received three additional evaluations: (1) John McGowan, Ph.D., in February 2018, diagnosed adjustment disorder with mixed anxiety and depressive symptomology; (2) Michael Glass, M.D., in April 2019, diagnosed PTSD that "will never be resolved sufficiently[;]" and (3) Robin Kay, Ph.D., in June 2019, who Tandoc had previously been seeing for mental-health issues prior to the incident, diagnosed PTSD. Further, in July 2019, Tandoc was seen by the Board's psychologist Daniel LoPreto, Ph.D., who concurred with the diagnosis of PTSD and concluded Tandoc was totally and permanently disabled. Dr. LoPreto opined that Tandoc's disability was preexisting and exacerbated by the incident.

Tandoc never returned to work in any capacity and applied for accidental disability benefits in October 2018. The Board denied Tandoc's application for accidental disability and instead awarded him ordinary disability.[1] As the basis

---

[1] For context, accidental disability benefits provide two-thirds of annual compensation whereas ordinary disability provides for approximately forty

for denial, the Board found that the incident was not "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury[.]"

In March 2020, the Board approved Tandoc's request for an appeal and this matter was transferred to the Office of Administrative Law as a contested case. An Administrative Law Judge ("ALJ") held a hearing on four non-consecutive days and issued an initial decision denying Tandoc's application for accidental disability. The ALJ found Tandoc had PTSD as a direct result of the incident and was totally and permanently disabled; however, failed to meet the objective standard for a terrifying or horror-inducing event. Thus, the ALJ denied Tandoc's application for failure to satisfy the Patterson[2] standard. On June 11, 2024, the Board issued a final agency decision adopting the ALJ's initial decision and denying Tandoc's application for accidental disability.

This appeal follows.

---

percent. See Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 193 n.2 (2007).

[2] Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29 (2008).

A-3554-23

## II.

"Our review of administrative action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)); see also Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

We are mindful that, even insofar as we may have reached a different result, substantial deference is afforded to an Agency's interpretation of a statute it is charged with enforcing. Richardson, 192 N.J. at 196; see also Kasper v. Bd. of Trs., of the Teacher's Pension & Annuity Fund, 164 N.J. 564, 580-81 (2000). Importantly, "[s]uch deference has been specifically extended to state agencies that administer pension statutes." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015). As such, our review of an agency's decision is generally limited to:

> (1) whether the agency's action violates express or implied legislative policies . . . ; (2) whether the record

6

contains substantial evidence to support the [agency's] findings . . . ; and (3) whether[,] in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Group, Inc. v. New Jersey Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2007)) (alteration in original).]

## III.

The Board determined Tandoc did not qualify for accidental disability benefits pursuant to N.J.S.A. 43:16A-7. In relevant part, the statute reads:

(1) Upon the written application by a member in service, by one acting in his behalf or by his employer any member may be retired on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.

[N.J.S.A. 43:16A-7(1).]

Therefore, to obtain accidental disability benefits, an applicant has the burden of proving:

7

1. that [they] are permanently and totally disabled;

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

    b. undesigned and unexpected, and

    c. caused by a circumstance external to the member (not the result of a pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of [their] regular or assigned duties;

4. that the disability was not the result of [their] willful negligence; and

5. that [they are] mentally or physically incapacitated from performing [their] usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

Moreover, our Supreme Court has clarified that where an application for accidental disability is proffered on the basis of an injury "precipitated by an exclusively mental stressor[,]" as here, the applicant must first prove: (1) that the disability "result[ed] from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the [applicant] or another person[;]" and (2) the incident asserted as the basis for accidental disability benefits must be "objectively capable of causing a reasonable person in similar

8

circumstances to suffer a disabling mental injury." Patterson, 194 N.J. at 50; see also Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 612 (1993) (emphasizing that an objective standard focuses the analysis on the character of an event and not an individual's reaction to the event). Thus, in cases regarding applications for accidental disability based on a purely psychological disability, "Patterson is the threshold that must be met for further inquiry to be warranted" and once Patterson is satisfied, then "Richardson comes into play." Russo, 206 N.J. at 32.

Tandoc's contention that incidents involving deaths, in and of themselves, satisfy the objective standard is unavailing. In Russo, the Supreme Court held "a qualifying traumatic event is, in itself, objectively capable of causing a reasonable person to suffer permanent mental injury." Russo, 206 N.J. at 18-19. However, Tandoc's reliance on Russo is misplaced. It cannot be gleaned from Russo that incidents involving deaths are per se terrifying or horror-inducing; instead, Russo establishes a three-prong test: (1) a terrifying or horror-inducing event; (2) that involves actual or threatened death or serious bodily injury; which (3) is objectively capable of causing a similarly situated reasonable person to suffer a disabling mental injury. Russo, 206 N.J. at 30-31. Although the Russo Court clarified that horror-inducing events can satisfy the objective standard,

the Court did not hold that incidents involving deaths automatically qualify as horror-inducing.

Citing to Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402 (2018), Tandoc further contends motor vehicle accidents involving fatalities qualify as terrifying or horror-inducing events. In Mount, an officer who arrived at a car crash scene where "the car burst into flames[]" and the victim's bodies "melted . . . into the interior of the vehicle[,]" satisfied the terrifying or horror-inducing standard. Id. at 427-28 (internal quotations omitted). While we recognize that Mount is somewhat analogous—insofar as both officers witnessed a death and were helpless to render aid—the factual circumstances of Mount, wherein three young women were engulfed in flames, is significantly more gruesome and horrifying than the facts here. As the ALJ found, the deceased passenger here "was not bloody or screaming or dismembered."

Tandoc's accidental disability application was denied because, notwithstanding the Board's finding that the November 15, 2017 incident resulted in the undisputed manifestation of PTSD, the incident was not capable of causing the same psychological manifestation in similarly situated police officers. "[W]e limit accidental disability recovery to stressors sufficient to inflict a disabling injury when experienced by a reasonable person in similar

10

circumstances." Patterson, 194 N.J. at 50. In rendering its decision, the Board relied on the following facts: (1) the deceased passenger was alive when Tandoc was caring for her at the scene; (2) although Tandoc ordered oxygen for the deceased, he became uninvolved once paramedics arrived, and she did not die in his care; and (3) there was no gore or blood at the scene.

In our review, we must remain cognizant of the Legislature's intent to "make the process more stringent" when the accidental disability criteria were amended. Department of the Treasury, Division of Pensions and Benefits, Administrative Code Update—Honorable Service; Disability Retirement, at 4 (Aug. 2016); see also Russo, 206 N.J. at 31 (discussing the objective standard and stating "[w]e adopted that standard to assure the bona fides of claimed mental injuries and to ameliorate the problem of subjectivity inherent in mental claims."). The incident, for as unfortunate as the death of the young woman undoubtably was, is not distinct from severe motor vehicle accidents, some of which result in casualties, that officers of this State frequently deal with. As such, and without facts more substantially analogous to Mount, a fatal accident, in and of itself, cannot be said to satisfy the objective standard.

We are satisfied that the Board's final determination relied on substantial credible evidence in the record and was neither arbitrary nor capricious. In view

of the deferential standard of review, we decline to substitute our judgment for the judgement of the ALJ and Board. Further, because Tandoc failed to satisfy <u>Patterson</u>, an analysis under <u>Richardson</u> is not warranted.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3554-23